Police Corps, my name is Jim Denbrun. I'm here on behalf of Space Exploration Technologies and its appeal from the District Court's dismissal of its Second Amendment complaint on grounds that it failed to elicit sufficient facts to show our understanding. The complaint in this case alleges a straightforward, naked restraint of trade in the form of a conspiracy by business competitors to boycott, rather, threatened to boycott a customer unless that customer refused to deal with a competitor, in this case my client SpaceX. Standing to sue in cases like this normally is not an interesting question, and we would submit to the Court that in this case it's not a serious issue either. Well, let me pursue that just a little bit. It seems to me that you are stuck with whatever it is the Court of Federal Claims decided. Indeed we are. That was not appeal. It was not appeal, and our position on the Court of Claims finding was that they decided a different issue. And this is where we say the District Court went wrong as well. It conflated SpaceX's qualifications to bid for the Air Force business with its capability to compete for that business. But if it wasn't eligible to bid, how can there be causation? The causation here, Your Honor, is that the complaint alleges that the Air Force procurement process itself and the terms and conditions under which the RFPs were issued were the result – they were rigged as a result of the threatened boycott, so that the causation flows from the boycott directly to the fact that we were not qualified to bid on that. We allege that – Wasn't there a concession that you couldn't possibly be ready for an additional fiscal year? Do I read that correctly? There was a concession, Your Honor, and we do not deny that. We were not qualified to bid on that RFP, but the allegation in the complaint is that the reason that we were not qualified was that the qualifications in the process were rigged as a result of the threatened boycott. Let me understand that. It's called an 06 RFP. Yes, sir. Or an 06 contract, and one of the requirements of that contract in order to qualify for bidding was that the bidder had to have had one of these vehicles all ready to launch at that time. That's correct, Your Honor. But, in fact, what the 06 RFP or the By-3 contract asked for was not a launch in 06, but a launch in, I think, 08. Is that correct? At least through 08. And your argument is that your client would have been capable of launching in 08. It was not capable of satisfying the condition for bidding that it had a vehicle capable of launch in 06. And your argument is that the requirement to be eligible to bid that said you have to have a launch-ready vehicle as of 06 was inserted because Lockheed and Boeing insisted upon that, and that's the violation. That's exactly the point, Your Honor. That's exactly the point, and that is the point that the district court would submit missed entirely. We don't contest the fact that we were not qualified. What we argue is that the quality... Not qualified in the sense that you didn't satisfy that criterion. That's correct, Your Honor. That's exactly right. And that... Why can't the government say, look, we want to see the vehicle before then let you bid? If you don't have it, you know, the promise that, oh, you know, you're going to be able to make one, anybody can do that, but people who actually have it are in a better position to stick by their promise. We don't have to then worry about extending the contract or damages from delay and all those things. What's your rationale about that? I think the government can reasonably reach that conclusion. What's alleged in the complaint, though, Your Honor, so the government could also have reasonably reached the conclusion that it did not need that capability, as it did not need it when Boeing and Lockheed first entered into competition for this business, and that the fact that the government said that it needed it was the result of the conspiracy and the threat to boycott. No, it sounds perilously close to me, like what you're trying to do is to run the government's procurement process, according to what your client thinks would be a better set of criteria. That's what it sounds like to me. I'm sorry. It sounds so pretty wrong. Believe me, I am. That is not the allegation in the complaint. The allegation in the complaint is that Boeing and Lockheed have decided that the government should run the program in the way that they see fit. You know, the Air Force has bombers, you know. They have nuclear weapons and stuff like that. Do you really think these guys can dictate to them? I mean, this whole idea that they can dictate to the Air Force what terms they're going to issue to Congress, it seems humorial to me. I absolutely believe they do, Your Honor. Well, that's bullying. People believe all sorts of things, you know. There are those people who believe the earth is flat, too, but they don't get into court. That's the question you're asking. They don't get into court over that. We are dealing with a complaint, Your Honor, and the allegations in the complaint, which must be taken as true for purposes of a motion to dismiss. And the complaint alleges that Boeing and Lockheed threatened to boycott the government. That is, we will withdraw from this business if you don't rig this procurement process in the way we say you should, which is to deal with us only. And in that situation, Your Honor, I would argue that it is entirely plausible that the government would say, okay. Your argument is, whether true or not, your argument is Lockheed and Boeing had the government over a barrel because at that time the government wanted what Lockheed and Boeing could deliver, and they threatened to withdraw, and the government exceeded the terms. That's correct, Your Honor. That's exactly the argument. But to return to Judge Kaczynski's question, it doesn't strike me as entirely irrational for the government to say, well, despite their sins, and the sins of Lockheed and Boeing are pretty well documented, among others by you. Yes. Despite their sins, they can provide these launch vehicles to us, and SpaceX, well, very interesting, but it's not demonstrated. Well. So it's a bit of a risk for us to let them come in, bid, and, oh, you know, well, the contractor said he'd do it, but here we are in 2011, and we'd kind of like the vehicle tomorrow, and maybe it'll here, maybe it won't be. I mean, why is the government wrong in concluding that it's safer to go with Boeing and Lockheed, who do have the demonstrated capacity not only to engage in somewhat shady dealing, but also the capacity to build these vehicles? I would make two arguments, Your Honor. One is that by as early as 2004, well before the RFP, my client had been approached by another government customer. NASA, right? And entered into negotiations with that customer for a launch, I believe, in 2007 or 2008, and announced the contract just months after the RFPs were issued. So there was a reliability there. We were not somebody who just walked in off the beach. This company had invested millions and millions of dollars. It had been examined top to bottom by this government customer. And had that launch occurred? Your Honor, I do not believe that launch was occurred. So how does this prove reliability? I mean, we're past 2007 now. Well. Certainly at the time the events of this case happened, all you'd know is that some other agency was foolish enough to do this deal. Well, does that mean that the Air Force has to be equally adventurous amidst procurement practices? I agree. I agree with you, Your Honor. What I would say is that we ought to look at the allegation in this complaint ex ante, at least as of the time of the complaint. But the second point is that the Air Force could well, I would suggest to the Court, have decided in a fair bidding process that at the end of the day, that they would allocate the 2007-2008 launches to Boeing and Lockheed, had we been permitted to participate in that process, but then allowed us also to bid meaningfully for the launches that followed after that, between 2007 and 2011. We were foreclosed from that as well by the fact that this boycott rigged the process and rigged the terms by which that procurement was left. What's the state of the record with respect not merely to the BY-306, if that's the right jargon? I have trouble with all these things. I do too. But with respect to later contracts for later launches, that is to say later contracts for launches that would be 2010, 2011, and so on, I saw in the footnote to the Court of Federal Claims a statement that the government insists that your client will have a full and fair opportunity to bid. But that, of course, wasn't a finding. That was just a statement of what the Air Force said. Can you help us with the state of the record as to where we are, what's going to happen, and what you're alleging is going to happen with respect to contracts after the 06 contract? Well, what we're alleging, the problem is the state of the record is on a motion to dismiss this, so we don't know many facts. And although I do know somewhat about how developments have occurred, that there have been further RFPs, I can tell you my client has not won them. And I think that the state of the record will be such that we'll be able to prove that the actions we've complained of have, in fact, injured us with respect to future launches. And the nature of the injury is, and here you can go back to the complaint, the nature of the injury is because of these subsidies, because of the favorable treatment, what's the nature of the injury? In the first place, the nature of the injury is that the Air Force allocated these launches out through 2011. They later came back and said, well, we're going to allow you to bid anyway. And the district court bought that. But the allegations of the complaint say that because of the technical complexity of this business, the need to actually integrate the launch vehicle and the payload into a system, that there's a lot of advanced work that needs to be done that it can extend years backwards. So it's not just like building a station wagon, loading up the back of the car, and off you go. That's exactly right. And, in fact, the Air Force itself has said, and I think we cite this at paragraph 94, the Air Force itself has said that once the buyer, the payload customer, and the launch provider begin work sometimes several years in advance of the actual launch, so that the complaint alleges that, in fact, we are, even though the Air Force may, in good faith, say come in and bid and we'll consider your bid, the agencies on whose behalf it acts as agents will have already been locked into Lockheed and Boeing by the time we're allowed to bid on those contracts. So that's the nature of the injury. What is at stake here in terms of these future bids? Is this kind of an annual program, or is it sort of as needed? It's an annual program that, according to the RFP, has already been planned out through 2011. And one of our complaints is that it's been planned out to a degree that those launches through 2011 are already allocated to Lockheed and Boeing. So we are excluded from the Air Force's business, which is the very largest piece of the government launch market, at least through 2011, if not longer, because of the way this bidding process was rigged by. Well, if, as a matter of law, you are ineligible, at least for the 06 launch, what does that do to your standing with respect to the future launches? Well, again, there's a question of what's in the record and what's not in the record. I believe that this is outside the record, that the Air Force has articulated new requirements, but those requirements now explicitly require, I believe, two successful launches. So that as a technical matter, we may well have standing, assuming we've accomplished that by the time we bid on these procurements. But the fact is that these launches are already allocated, according to this matrix that the Air Force issued, to Boeing and Lockheed. So it's a practical matter, as we've alleged in the complaint, we are locked out of that competition, even though we may have the right technically to bid. You mean they don't have to bid or they've already bid? Let me say they're locked in. I don't quite know what that means. Has a bidding occurred for those years? Technically, the bidding has not occurred, Your Honor, but what we allege in the complaint is that Boeing and Lockheed have been working with the agency customers now, in advance of the bid, to tune the payload to the rocket and vice versa, and that we have not been able to be part of that because the launch is allocated. Why isn't all this, I mean, this gets us into the no penitent issue. You're assuming all you say is right. Why isn't this all protected by no penitent? Well, Your Honor, I think if you look at sort of root concerns here, I think Your Honor has said that the reach of the no penitent doctrine is only so far as necessary to ensure that it doesn't violate the First Amendment. And here, what we're talking about is a threatened boycott of the government acting as a customer. There is no, I would submit, petitioning interest implicated by prohibiting group boycotts of the government as a customer. This boycott, in fact, shuts down the administrative process because it makes the agency deaf to any other competing views. I have to say, here's where I am at the moment on this case, and the other side may talk me out of it. My instinct is that there's enough to get past Article III because Article III is an outer boundary. It would be impossible under the facts of this case for Congress, even if it wished, to give you a cause of action. I mean, that's inherent in the definition of Article III. There's so little injury, or an injury is totally nonexistent, and it would be impossible for Congress to pass a statute that would give you a cause of action. That's a pretty high standard, or from your side, a pretty low standard. On the other hand, you may lose on antitrust standing. That is to say, this may be too speculative for damages under the antitrust laws, and you may lose on no penitent. Well, let me respond first to the antitrust standing, if I could, Your Honor, and I understand what you mean. What I would submit, though, Your Honor, is that the injury that the complaint alleges that SpaceX suffered here is no different in kind than the injury that any excluded competitor suffers when a customer refuses to deal with it at the behest of conspiring competitors. It's exactly the same type of injury. If we were to conclude that you had satisfied Article III, should we go on to the next questions? The district court, of course, did not, and I understand this is a 12B6, so it's not as though we need more record. Is there more argument that you would wish to make that you didn't quite get to make in the district court, or are we just ready to rule on antitrust standing and no penitent as well? I'm inclined to ask you how you're leaning before I answer that question. Oh, funny thing, yeah, yeah. I think we ought to ask a call for the views of the Department of Justice, since this is, after all, something that's deeply relevant to the government procurement process. It's a little strange to be on the side of the case without having the views of the one party that's really directly affected by this. Your Honor, we certainly don't object to getting the department's views on this. They have been involved in litigation up to now. They have not been involved, Your Honor, but I would suggest that it's not necessary, because the outcome of this case, whatever it is, it's not directed at Air Force policy. It's directed at redressing conduct with friends. Well, if they're being bullied around, and, you know, the way you are talking about it, and the Air Force, the U.S. Air Force is being manhandled by our own corporations, and maybe we ought to know about this. Maybe the Justice Department needs to know about this. Well, Your Honor, again, we don't have any objection to bringing the Justice Department in on this, but I would say, Your Honor. You want to save the two and a half minutes you have for rebuttal? I'd like to do that, thank you. Okay. We'll hear from the other side. Good morning, Your Honor. May it please the Court, Daniel Collins, Munger, Tolles, and Olson, on behalf of, excuse me, the Boeing Corporation. With respect to the ---- Have you guys been beating up on our Air Force? No, Your Honor. The Court of Federal Claims proceeding ---- Have any of your employees gone to jail for fraud on the Air Force? Your Honor, there are allegations to that effect, and there have been judgments. I don't think any of that relates to the lack of Article III standing in this case. Here, in the Court of Federal Claims proceeding, the Court of Federal Claims in deciding the issue of standing actually went through a number of legal tests. It first has an entire section of the opinion on actual or prospective bidder. It then goes through direct economic interest. And in going through that, it acknowledges the qualified bidder standard, and then it notes that SpaceX made an argument about a realistic bidder standard. And it said, well, whichever standard it is, you don't meet it. And it said definitively, Plaintiff has no chance of receiving a contract award for fiscal year 06 missions, regardless of any procurement violation that it might prove. Now, they obviously disagree with how they litigated that case. They wish they had raised different arguments and issues about the structure of the procurement and whether or not they were properly a realistic bidder for that, but they were found not to be. Now, realistic is different from legally entitled bidder. It's quite clear that the criteria for bidding, they didn't qualify. They didn't satisfy, and that's what the COFC says. The COFC said, in going through the alternative standard, not just that they didn't make the bid and that they didn't qualify, but it went through this analysis of even a realistic bidder standard. So there's no chance on the record that you've given us that you could get these contracts. And, therefore, no matter what procurement violation you would prove. And therefore we may be speaking the same language, but we may not be. As I read the Court of Federal Claims opinion, it said that under the criteria of the contract, or rather under the criteria soliciting the bidding, you did not qualify, and, therefore, you couldn't do it. I didn't read them as saying that if the criteria for entering into the contract had been different, you couldn't have satisfied that, nor did I read the COFC as saying you were incapable of providing a vehicle that could have been launched in 2008. Am I wrong in saying that? The section I think Your Honor is thinking of is primarily the actual prospective bidder standard where they go through the qualifications, and they have a footnote noting. You know, I asked a question. I said, am I wrong? Yes or no? I think that the Court's analysis goes further. I think they went beyond the holding of the Court of Claims opinion, goes beyond the fact that they didn't meet the criteria, in that they were making this pre-award challenge really with respect to the 07 and further and the notational issue. And then the issue came up of, in terms of their standing, in terms of the direct economic interest, whether or not they were a qualified bidder or merely a realistic bidder. Is there anything in the Court of Claims, Court of Federal Claims opinion that speaks to post-06 RFPs? Yes. That was actually the main thrust of the whole challenge that they made administratively and in the Court of Federal Claims. They were very concerned about the notation that accompanied the RFP. It wasn't incorporated in it, but accompanied in it, in that they've alleged they were very concerned about the notational allocation that was in there. It was clarified during the agency process, again, during the GAO process, and definitively held by the Court of Federal Claims, that those allocations did not in fact result in award of those future contracts, were not commitments of those, and therefore they would be free to bid for those when those came down. But in further answer to Judge Fletcher's question. But what does that do so far as the standing argument? You heard your opposing counsel. I think it means that with respect to those, the claim is unripe. When those procurements come, those RFPs are issued, they can bid, and if they don't like something about how the bid is structured, they can go to the Court of Federal Claims, and there is a claim there. It is unripe to assert here any claim with respect to anything beyond the fiscal year 06. I'm sorry. Are they – there is a bid protest in the Court of Federal Claims. Can you actually challenge the terms of the RFP? That issue was not specifically raised. That's what I was going to say in further response to Judge Fletcher. It was not specifically raised whether or not the ---- No. You made a prediction about the future. You said in future years they can bid. If they're then happy with the requirements, they can go to the Court of Federal Claims and challenge the requirements. And I just wasn't aware that the Court of Federal Claims can – has authority to manage the requirements of request for proposals. Does it? I don't know. Well, if they claim that there was some defect in the process that produced the RFP and that it could be challenged, then they – the time to challenge the RFP and to do that was in the Court of Federal Claims. What I was going to say to Judge Fletcher in response, it is not our position – I'm not suggesting that the issue was specifically litigated over whether or not they met the criteria. But I do think that the ultimate bottom-line conclusion, that they had no chance of getting these contracts, which were awarded then and the award is made, is something that carries over and has collateral effect. Wait a minute. You can't know. The first half of your sentence and the second half of your sentence can't both be true. If it wasn't litigated, you don't get collateral estoppel. It wasn't litigated in the sense that they did not raise that issue in leading to – No, no. I'm afraid we're just back to elementary civil procedure. If it is actually litigated and actually decided, you get collateral estoppel. Otherwise, no. The issue of whether or not they had any chance of receiving the contract award for fiscal year 06 missions was litigated. Of course. That's common ground. That larger question. Now, they didn't raise as a sub-issue within that this particular argument. They didn't. They obviously, you know, maybe regret that they didn't raise that. Or maybe you don't. Maybe you regret because it wasn't decided and you can't get collateral estoppel. But collateral estoppel is meaningless if an issue can be collaterally challenged by saying, well, I could have raised this additional argument with respect to this ultimate issue that was decided, but I didn't raise it. Okay. Let's back up and be sure because we may be losing our antecedent. What particular issue are you saying is collateral estoppel that could have been raised but that was not? Their ability to get the fiscal year 06 contracts. No, no. I think we're on common ground on that. We know that given the criteria for the contracts, they couldn't satisfy it. That we know. What we're after is whether or not they were capable of providing a vehicle that would have been able to launch in 2008. And I see nothing in the COFC decision that tells us one way or the other on that point. I think the deficiency goes beyond that. Now, let's stick with what I said. We're in agreement that under the terms of the contract, they simply, the criteria for entering into the bidding, they couldn't satisfy it. We understand that that's collateral estoppel. Second point, were they capable as a physical matter of producing a vehicle that could launch in 2008? Is there anything in the COFLC, the Court of Federal Claims, that is collateral estoppel on that particular narrow point? On whether or not they could. And whether they would have or could have been capable of launching a vehicle in 2008. No. Okay. That's what I was interested in. The Court of Claims opinion does go and say, in addition to the RFP, it notes in footnote 3 that there were 73 specifications that Boeing and Lockheed had made. This gets into, I think, a broader Trombley issue in that they've not alleged that we rigged all 73 of those, that they could meet all of those in addition to the RFP. They've not alleged a plausible claim in light of the competing inference that the Air Force would like to have reliable vehicles. Something more is needed when the claim is facially implausible in that respect. There's a competing inference that is on the face of the complaint. And you need to come forward with something more. If Trombley means anything, it means that that is not sufficient here. You know, I'm fairly sympathetic to, I guess I should say, your clients, that is to say Boeing and Lockheed, and the government on the point raised by Judge Kaczynski, and that is to say it doesn't seem to me inherently objectionable for the government to adopt a sort of conservative strategy and go with the contractors who have, at the time of entering into the contract, a proven track record that they can deliver such vehicles. That seems to me, okay, that seems sensible enough. I don't see anything inherently wrong with that. And maybe setting up a contract that produces criteria precisely such as that. Now, the allegation is that the Air Force might not have done that on its own. It was bullied into doing that, and that may or may not be true. But what troubles me from your client's standpoint is that it's not so much the criteria for entering into the 06 contract, but how long this was going to last. Because the allegation is once you've entered into the 06 contract, the advantages given pursuant to that contract are so enormous that as a realistic possibility, SpaceX is locked out of this market for all time. Now, would you respond to that part? That issue, I do think the CO, the Court of Federal Claims did decide, and it is collateral stock. It decided that anything that the issue of the notational allocations is not something that resulted in any sense in an award of those contracts, did not give them as a pre-award bid or any kind of indirect or direct economic interest in those. Now, how do they say that? I understand that they said that the Air Force has said that those are no longer in the contract. And the Air Force has said that for future bidding, they'll have a full and fair opportunity. But I don't see a finding in the Court of Federal Claims that, in fact, there will be a full and fair opportunity. But it's clear from the – that was the major issue. That was the core of both the agency protest, the GAO protest, and the Court of Federal Claims opinion. It was the notational issue. And that representation was made and was seized upon by the Court of Federal Claims in deciding this issue in terms of saying that there was nothing with respect to those that was in the current RFP. And that – Now, could you give us the citation in the Court of Federal Claims opinion? Where would that be covered? The issue is discussed on page 15 of tab 51 of the excerpts of record. And that's where this – the issue is discussed. And they say in particular, Any attempt to characterize the current RFPs as encompassing more than I'm on that page, but where are you reading from? Oh, I'm reading in the first column, in the first full paragraph towards the end. Any attempt to characterize the current RFPs as encompassing more than fiscal year 2006 is, as Counsel for Lockheed argued, plaintiff's attempt to manufacture standing with regard to the current procurements that relate only to fiscal year 2006 requirements. There will be another RFP. They can bid in that RFP and, you know, if they have an injury then, then they can pursue that at that point. But until that RFP occurs, that issue about what was the scope of what was at stake in the RFP and what's the significance of these notational allocations, that issue clearly was joined factually decided by the Court of Federal Claims and then not appealed. So that is collateral estoppel. Now, again, I'm losing your antecedent. When you say that is collateral estoppel, what do you mean precisely when you say that? The issue of the scope of the RFP and the significance of the notational allocations that had been made, those issues were joined and decided in the Court of Federal Claims. That is to say, they say that you could not compete for FY06 and that's over and done with. Right. Future contracts were not decided. Because they haven't been put out for RFP yet. Exactly. Right. But what about the argument made by SpaceX that the terms of the contract that they could not bid on, and the Court of Federal Claims says they could not bid on, that's collateral estoppel. The terms of that contract are such that, as a practical matter, they are at an insuperable disadvantage in the future. That is a speculative claim. I mean, that is something that may or may not happen depending on how the RFP works out. It's not an injury that is certainly impending, as Worth and Lujan suggest in the Article III context. But certainly in terms of an antitrust injury context, it would be unduly speculative and not a claim that can be asserted. I see. But that's not foreclosed by the Court of Federal Claims. I think it is for – well, it is speculative when it is combined with what was decided by the Court of Federal Claims, which is the scope of the RFP and the fact that there would be an RFP and that the government had made these representations about its intent. Once you take those facts decided by the Court of Federal Claims, this further thing makes it entirely speculative. I keep pushing on representations by the Air Force and keep trying to shove them into findings by the Court of Federal Claims. And I keep resisting characterizations by the Court of Federal Claims as to what the Air Force represents. Those are merely representations by the Air Force. It was a representation by the Air Force, which is, of course, the contractor at issue and whose intent was at issue before the Court of Federal Claims. That's right. But that's not a finding of the Court of Claims. That's a representation by the Air Force. But I think it's clear that the Court of Federal Claims holding rests on that representation, that they accepted that representation. Which representation now? Which one are you talking about? The representation that they would be given every consideration. They quote that in the language of their opinion. They quote it on a footnote that the Air Force insists. They do not say that, in fact, this will come about. Of course, they can't say this will come about because it's in the future. That's right. But it was the statement of the intent, and that intent was relevant to construing the RFP and what may or may not happen in the future proceeding. I don't think the particular issue with respect to whether a colonel or an ostopo extends to that representation is ultimately of any moment to the issue of whether or not it's a speculative injury with respect to the future RFPs. I think it clearly is a speculative injury. And all of these same arguments, as we've indicated in our papers, could be translated into an antitrust injury context, and then there is also an issue with respect to the Noor-Pennington. And there, the airport car rental case is actually very similar to this one because the claim was similar to the one alleged here, which is the allegation that the airport agency should establish criteria that the competitor would not be able to apply Noor-Pennington, rejected a commercial exception. They ask you to overrule that, but, of course, only the en banc court could do that. And so this would also be covered by Noor-Pennington in that respect. Okay. My colleague for Lockheed Martin, David Marks, would like to make a few comments as well. Unless the Court has any further questions, then I will submit. May I please, the Court? Thank you, Your Honors. I just want to follow up on a couple of points that Mr. Collins made in response to your questions. First, Chief Judge Kaczynski, it should be clear that the United States was a party to both the intra-agency protest that SpaceX filed with respect to the fiscal year 06 launches. It was also a party with respect to the protest that SpaceX filed with the Government Accountability Office before it went before the Court of Federal Claims, where, of course, the United States was also a party when SpaceX attempted to enjoin the award of the contracts to the defendants, Lockheed Martin and Boeing. So I think SpaceX did not join the United States as a defendant in this case. I don't think we need the United States as a defendant for purposes of affirming Judge Cooper's ruling. The United States was representing the Air Force. Yes. With respect to the intra-agency protest and then before the Government Accountability Office and then before the Court of Federal Claims. As an agency, in other words. Yes. Yes, Your Honor. You know, the last thing you said didn't follow at all from the previous ones. You said the government participated in all those other proceedings and therefore we don't need them here. I could just as well have come to the opposite conclusion. It was participating in every other proceeding and therefore we really do need them here. Why is your conclusion any better than my conclusion? To the extent that the issue is do we need to know what the United States' views are with respect to SpaceX's alleged exclusion from the fiscal year 06 EELV awards, I think the answer to that question is no. The United States believes that SpaceX was not unlawfully excluded and therefore for purposes of trying to determine whether SpaceX has been damaged in any way, shape or form by the alleged exclusion from that procurement, we don't need them. And I think it's important to bear in mind that all of the damages that SpaceX claims in this case derive from that alleged exclusion from the fiscal year 06 EELV procurement. And to the extent that SpaceX has conceded... But they're making a claim that they were excluded for a particular reason, which is anti-competitive behavior, that they were excluded because EO clients and Mr. Collins' clients acted badly. Yes, they are, but they've also admitted before the court of federal claims and they've admitted in the complaint and in their reply brief that, I think it was page 42 in the footnote, that at the time that procurement occurred, SpaceX did not have the capability to provide full EELV launch capability and they wouldn't have it, they said then, until 2007. They've now said until 2008. Defendants had nothing to do with SpaceX's inability to provide the service that the government was attempting to purchase back then. And therefore, it can't meet the Article III requirement for constitutional standing, let alone the more restrictive requirement for antitrust standing. Thank you, Your Honor. Just a couple of very brief points. I'd like to address the issue of whether the allocation into future years is a speculative injury. That's a testable hypothesis. Under the theory of the complaint, the Air Force's agencies, whom it represents in this process, and Boeing and Lockheed have probably been working together as to future launches. We can test that hypothesis and discover it. It's not speculative. We can find out if we've been injured. As to the capabilities of SpaceX, as found by the court of claims, I'd just like to briefly read this from the court of claims opinion, which is at page 16 of tab 51. Plaintiff's accession in the EELV market has been impressive. A relatively new entrant, plaintiff has obtained contracts with several government agencies for launch services, including the launch of an EEL class vehicle in 2007. Such accomplishments aside, however, plaintiff fully concedes that it will not have full EELV launch capability prior to FY07. I would submit that that does answer the question of whether, had the requirements not been the result of a coerced bidding process by the Air Force, that SpaceX was fully capable of competing, and, as alleged in the complaint, would have had some degree of success in obtaining contracts in the FY06 RFP. And is your argument rise or fall on whether or not – let me back up and say it this way. I understand part of your argument is that the joint efforts of Boeing and Lockheed resulted in the Air Force setting up as criteria for entering into the 06 contract, criteria that you could not satisfy, and therefore you could not enter into that contract. Yes, sir. Does your – does the success of your complaint rise and fall based upon whether or not we agree with that? That is to say, are you saying, well, if it had not been for their collusive behavior, the Air Force would have entered – would have set up bidding criteria under which we could have bid and would have bid – would have been able to bid successfully? Do we need to come to that conclusion for you to win? I'm not sure that you do, Your Honor. Okay. How is that so? That's it. I'm sorry. How is that so? Well, the complaint alleges, Your Honor, that the actual bidding requirements, which had the effect of excluding us, were the result of the boycott. And I think that that's sufficient to show injury in fact. I'm not sure that we have to prove or that we have to allege a negative, although the complaint does. The complaint does allege that had the requirements been different, we would have won our fair share of those contracts. So the complaint does cover it. But does the complaint allege not only that had the bidding requirements been different, but rather that absent what you call the illegal behavior, assumed for purposes of the complaint and argument that it is illegal behavior, it's only an assumption, but are you saying that absent that illegal behavior, the criteria the government would have set up would have been criteria that we could have satisfied? The complaint does allege that, that we would have won our fair share of contracts in the FY06 RFP. And you stand or fall as to whether or not we think that's enough? I don't believe that. Well, I believe that it's enough to allege that the process was rigged in a way that excluded us and it was rigged as a result of an illegal boycott. Okay. Thank you. Thank you. Case resolved. Thank you, Mr. Chairman. We'll next hear argument in Fisher Tool Company v. Mayhew.
judges: Kozinski, O'scannlain, Fletcher